## Klebak v. PennDOT

C.P. of Allegheny County, no GD 93-8064.

*Samuel P. Kamin* and *Samuel R. Greco,* for plaintiffs.
*Michael J. Creighton,* for defendant.

FRIEDMAN, *J.,* July 26, 2000—This case is governed by the law of eminent domain. Upon petition of defendant Commonwealth of Pennsylvania, Department of Transportation, a rule was issued upon plaintiffs to show cause why the viewers' report setting a value of $500 upon their interest in certain real estate should not be confirmed. Because there appeared to the court to be a mixed question of fact and law, a position strongly disputed by PennDOT, it was decided to take evidence, after which there was again argument on the rule.

## FACTUAL BACKGROUND

It is undisputed that PennDOT originally condemned only an easement over plaintiffs' property in August 1971. (Stipulations of fact no. 1.)[1] At that time the legislature had not yet given PennDOT the authority to condemn underlying fee interests. (This did not occur until 1979.) The purpose of the 1971 easement was for a proposed highway project which was never begun. (Stipulations of fact no. 4.)

In May 1989, almost 18 years after the condemnation or the easement over plaintiffs' property, PennDOT met with an automobile dealer regarding the disposition of the Route 48 parcels, including plaintiffs', over which its unused easement ran. (Stipulations of fact no. 5.) The dealer subsequently notified PennDOT of his interest in relocating his automobile dealership to those Route 48 parcels. (Stipulations of fact no. 6.) In an internal memorandum dated September 28, 1989, PennDOT indicated it had "approved the leasing option for Pa. 48 properties that are being considered for development." Another internal memorandum dated October 18, 1989, instructed a PennDOT employee to "[s]tart buying underlying fee in priority order for leases. We need fee because will [sic] end up selling the property later." (Stipulations of fact no. 10.)

The property in question was included in a "priority appraisal" ordered by PennDOT. (Stipulations of fact

---

1. Defendant incorrectly characterizes this as being "totally condemned" in its brief in support Commonwealth's [sic] rule to show cause etc., p. 1.

exhibit I, p. 3.) The appraisal was based on the assumption that PennDOT owned or would acquire the underlying fees. (Stipulations of fact, exhibit J, p. 1.) The "priority" was needed because the auto dealership had a deadline of January 1, 1990 to expand or lose its franchise. (Stipulations of fact, exhibit I, p. 3.) The fair market value of the 11.95 acres total that PennDOT planned to lease to the auto dealership was put at $145,000 by one appraiser as of November 30, 1989, and at $167,000 by another appraiser as of a week later, December 5, 1989.

On March 23, 1990, PennDOT filed a declaration of taking of the plaintiffs' reversionary interest in the underlying fee. (Stipulations of fact no. 17.) The property was then sold to the auto dealership by quit claim deed on September 21, 1990 for $176,600. (Stipulations of fact no. 22.)

## DISCUSSION

The legal issue raised by the stipulated facts, especially those referred to above, is whether or not PennDOT's abandonment of the easement was "imminent" when the underlying fee was condemned. PennDOT argues that because it did not *formally* vacate the easement, the undisputed abandonment could not, *as a matter of law,* have been "imminent." PennDOT also argues that the board of viewers awarded "nominal" damages, despite the fact that the language of the award refers to "general" damages. "General" is not synonymous with "nominal." Black's Law Dictionary defines the terms as follows:

"General damages. Such as the law itself implies or presumes to have accrued from the wrong complained

of, for the reason that they are its immediate, direct, and proximate result, or such as necessarily result from the injury, or such as did in fact result from the wrong, directly and proximately, and without reference to the special character, condition, or circumstances of the plaintiff.

"Nominal damages. Nominal damages are a trifling sum awarded to a plaintiff in an action, where there is no substantial loss or injury to be compensated, but still the law recognizes a technical invasion of his rights or a breach of the defendant's duty, or in cases where, although there has been a real injury, the plaintiff's evidence entirely fails to show its amount."

## CONCLUSION

The court has concluded as a matter of law that abandonment was imminent given the facts of this case. The law applicable to highway easements at the time of the original condemnation in 1971 contemplated that the Klebaks would have the opportunity to use the property if PennDOT abandoned its plans to use the easement for highway purposes. In addition, the Klebaks could have used the underlying fee which they always owned for purposes not inconsistent with PennDOT's highway purposes: for example, they might have been able to sell the mineral rights, subject only (one hopes) to PennDOT's right to support.[2]

PennDOT's argument is that it must *always* win cases such as these as a matter of law. That cannot be the case,

---

2. For an article on long-wall mining under interstate highways, see the *Pittsburgh Post-Gazette,* May 18, 2000, p. 1.

however, or the legislature and the appellate courts would not have provided an opportunity for persons aggrieved to be heard. If someone is entitled to be heard it is because, under a certain factual scenario, he may be entitled to relief. Consequently, this aspect of PennDOT's argument is without merit. If the legislature wanted all pre-1979 easement condemnations to be treated as though they were of the entire fee it would have so stated. If the appellate courts felt the law is as clear as PennDOT contends they would not be a party to the false hopes created by the right to have a board of view set a value on the fee. If all anyone is ever entitled to for condemnation of an underlying fee is nominal damages, that would have been made crystal clear one way or the other.

The court concludes that PennDOT's conduct indicated it had effectively abandoned the easement before it had formally done so. Plaintiffs are entitled to have a jury decide whether their share of the fair market value of the 11.95 acres is greater than the $500 general damages determined by the board of view. The rule must therefore be discharged, PennDOT's petition denied, and plaintiffs' trial on the amount of damages allowed to proceed before a jury.

## ORDER

And now, to-wit, July 26, 2000, the rule issued upon plaintiffs is discharged and defendant's petition to confirm the viewers' award is denied, and the question of the correct value of plaintiffs' interest in the underlying fee is to be submitted to a jury. See memorandum in support of order filed herewith [not published here].